W. C. "Bud" DAVIS, Appellant,

v.

Bobby NORMAN and Cleddie Shock, their Employees, Agents and Officers and any persons acting by, through or under their direction, Appellees.

No. 76–1919.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1977.

Decided May 16, 1977.

Robert J. Brown, Little Rock, Ark., argued and filed briefs, for appellant.

Robert Tolson, Jr., Pine Bluff, Ark., argued and filed brief, for appellees.

Before VOGEL, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

LAY, Circuit Judge.

W. C. "Bud" Davis appeals from the district court's dismissal of his complaint brought under 42 U.S.C. § 1983. Davis sought to enjoin the removal by the Pine Bluff Police of a wrecked vehicle from his front yard on grounds that the removal would infringe upon the exercise of his right to free speech.

On July 23, 1976, Keith Davis, appellant's son, was killed when a truck which he was driving collided with another vehicle. The crash occurred following a high speed chase through a residential section of Pine Bluff,

Arkansas, in which the police were pursuing Davis' truck.

Upon examining the wrecked truck, Davis discovered what he believed to be a bullet hole in the right front fender. Davis placed the truck in his front yard as a symbolic protest against police abuse of authority. Some school children placed a sign on the truck which read: "Look what the Pine Bluff Police did to our friend Keith Davis." Mrs. Davis removed the sign since she felt the truck was more expressive of their protest.

Davis was served with notice to remove the truck under Pine Bluff City Ordinance No. 4542, which prohibits the unenclosed storage of abandoned, wrecked, or inoperable motor vehicles on public or private property for more than 15 days, and authorizes the police to remove such vehicles, if the owner fails to do so after 72 hours notice.

After receiving the notice Davis informed the city attorney that the truck was displayed in protest and that it was protected by the First Amendment. Davis then commenced this action to enjoin the Pine Bluff Police from removing the truck from his property. The district court denied relief, finding that the truck was an abandoned vehicle under the ordinance and that Davis' First Amendment claim was without merit. However, the district court did direct the police to preserve the truck as evidence if it was impounded. This appeal followed. We affirm.

On appeal Davis asserts that the display of the wrecked truck is "symbolic speech" within the protection of the First Amendment and that the ordinance is unconstitutional as applied to him. Assuming arguendo that the display of the truck is symbolic speech,[1] we find that the ordinance regulates conduct and any infringement on Davis' First Amendment rights is incidental. The Supreme Court has held that:

[W]hen "speech" and "nonspeech" elements are combined in the same course of

---

1. Spence v. Washington, 418 U.S. 405, 409–11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974); United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms. . . . [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest. . . .

*United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

We find that the ordinance meets the *O'Brien* test. The ordinance serves the basic purpose of protecting the community from the health and safety hazards created by abandoned, wrecked and inoperable vehicles.[2] The effectuation of this objective by requiring enclosed storage is within the constitutional power of the city and furthers important and substantial government interests. Also the furtherance of these interests is unrelated to the suppression of free expression. Both the governmental interest and operation of the ordi-

nance are limited to the noncommunicative aspect of Davis' conduct. *Cf. Buckley v. Valeo,* 424 U.S. 1, 15–17, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Finally, we perceive no less restrictive means to achieve the enunciated governmental interests than enclosed storage.

The judgment of dismissal is affirmed.[3]

---

2. The preamble to the ordinance states that the unenclosed storage of these vehicles (1) reduces property values; (2) invites plundering; (3) creates fire hazards; (4) constitutes an attractive nuisance creating a hazard to the health and safety of children; (5) promotes urban blight; (6) violates zoning regulations; and (7) constitutes debris creating a health and sanitation hazard.

3. On April 20, 1977, the Supreme Court in *Wooley v. Maynard,* —— U.S. ——, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), *affirming,* 406 F.Supp. 1381 (D.N.H.1976), held that the State of New Hampshire could not constitutionally enforce criminal sanctions against a person, who because of moral and religious beliefs covered the state motto "Live Free or Die" on his passenger vehicle license plates. Plaintiffs, Jehovah Witnesses, claimed that New Hampshire's requirement that they disseminate a particular ideological point of view impermissibly infringed upon their First Amendment rights including the freedom of religious beliefs. New Hampshire advanced the two countervailing interests: that the display of the motto (1)

facilitates the identification of passenger vehicles and (2) fosters state pride. The Court held that the second claimed interest did not outweigh the infringement of plaintiffs' First Amendment rights and that the first could be achieved by less restrictive means.

On appeal Davis relies on the district court's decision in *Wooley v. Maynard* and urges that it supports his request for injunctive relief. However, we find that *Wooley v. Maynard* is distinguishable. The New Hampshire statute, unlike the ordinance, was not unrelated to free expression. The statute was found to "broadly stifle" First Amendment rights by coercively requiring residents to disseminate a particular ideological point of view. The ordinance in question neither requires an individual to endorse a particular belief nor represses his freedom of expression. In addition, the interests advanced by New Hampshire in support of its statute could be achieved by less restrictive means, whereas the interests furthered by the ordinance cannot be achieved by less restrictive means than enclosed storage.